227 So.2d 873 (1969)
Calvin Carlos CAMPBELL, Appellant,
v.
The STATE of Florida, Appellee.
No. 35622.
Supreme Court of Florida.
June 11, 1969.
Rehearing Denied December 2, 1969.
*875 Richard J. Wilson, Gainesville, for appellant.
Earl Faircloth, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellee.
ROBERTS, Justice.
The appellant was convicted of murder in the first degree without recommendation to mercy and has appealed to this court from the judgment of conviction as authorized by Section 4(2), Article V, Constitution of Florida, F.S.A.
The victim of the crime was a deputy sheriff who was shot while attempting to arrest the appellant as a suspected bank robber. The state adduced evidence that showed conclusively that the appellant had robbed a bank at Kingsland, Georgia, and then fled in an automobile that he had rented under an assumed name. A good description of the get-away car and of the appellant was given to law enforcement officers; and officers at all levels  city, county and state  from both Georgia and Florida, alerted by radio, participated at one time or another in the pursuit of appellant at speeds generally exceeding 100 miles per hour. The chase began at Kingsland, Georgia, proceeded to a point in Florida near Macclenny just south of the Georgia-Florida line where the fatal shooting occurred, and then to a point in Georgia just north of the line where a road block had been set up and the appellant was finally apprehended.
Testimony of witnesses to the shooting showed that the victim, Deputy Sheriff Fish, was in hot pursuit of the appellant, both travelling at a high rate of speed, when the appellant's car failed to make a turn and came to rest in a ditch. Deputy Fish and the appellant both got out of their cars and moved over to stand by the patrol car. There was evidence from which the jury could find that the deputy was holding a sawed-off shotgun in one hand and was trying to handcuff the appellant with the other. It was also shown that the deputy carried his revolver in a holster on his left hip with the handle pointed forward, that three shots had been fired from it, and that the bullet that fatally wounded Deputy Fish had been fired from it. The appellant's fingerprints were on the gun. The jury also had the right to find that the appellant snatched the gun from the holster and shot twice in quick succession and at close range and then fired the third shot to remove the handcuff that the deputy had succeeded in placing on one wrist. (It was shown that the appellant's own gun, which he had used in intimidating the bank employees during the robbery, had been thrown or had fallen out of his car when it struck the ditch.) The appellant then continued his flight in the patrol car and, a few minutes later, was apprehended at the road block set up by both Georgia and Florida law enforcement officers. The appellant stated to these officers that he took Deputy Fish's gun away from him and shot him twice as he was being handcuffed. At the trial, however, he testified that the pistol went off twice during a struggle with Deputy Fish but denied that he intended to shoot the deputy. His defense was not guilty, and not guilty by reason of insanity. As noted, the jury returned a verdict of guilty without recommendation to mercy. This appeal followed.
On this appeal the appellant contends that the recent decision of the United States Supreme Court in Witherspoon v. Illinois, 1968, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, concerning the qualifications of jurors who are opposed to capital punishment to serve as such in a capital case, is contrary to the law of Florida as expressed in § 932.20, Florida Statutes, F.S.A., and as interpreted *876 in Piccott v. State, Fla. 1959, 116 So.2d 626. We do not so interpret the Witherspoon decision. In it the court expressly limited its decision to those cases in which a prospective juror is challenged and removed solely on the ground that he is opposed to capital punishment or has conscientious scruples against inflicting the death penalty. Its statement in this respect is as follows:
"The issue before us is a narrow one. It does not involve the right of the prosecution to challenge for cause those prospective jurors who state that their reservations about capital punishment would prevent them from making an impartial decision as to the defendant's guilt. Nor does it involve the State's assertion of a right to exclude from a jury in a capital case those who say that they could never vote to impose the death penalty or that they would refuse even to consider its imposition in the case before them. For the State of Illinois did not stop there, but authorized the prosecution to exclude as well all who said that they were opposed to capital punishment and all who indicated that they had conscientious scruples against inflicting it." 88 S.Ct. at pp. 1772-1773.
Our statute, § 932.20, supra, provides that
"No person whose opinions are such as to preclude him from finding any defendant guilty of an offense punishable with death shall be allowed to serve as a juror on the trial of any capital case."
And our decision in Piccott v. State, supra, 116 So.2d 626, stands for the proposition that, to be qualified to serve in a capital case, the juror must be able to consider impartially not only the question of the guilt or innocence of the defendant but also the question of whether or not to recommend mercy for the defendant. If the juror says that, because of his views on capital punishment, he can render a verdict of guilty only if accompanied by a recommendation to mercy, he is not qualified. Piccott v. State, supra, 116 So.2d at page 628, citing Metzger v. State, 1881, 18 Fla. 481, 487.
It appears, therefore, that both the statute, § 932.20, and the decision in Piccott are in accord with the holding in the Witherspoon case, supra. And there is nothing in Piccott nor in Witherspoon to support the appellant's contention that reversible error was committed in excluding Juror Green because of his views on capital punishment. This juror was interrogated at length by counsel for the state and for the defense and by the trial judge with respect to his religious scruples against the death penalty. The only logical conclusion was that Juror Green would not be able to consider impartially the question of the guilt or innocence of defendant on account of his religious scruples against the death penalty. We think the able trial judge correctly exercised his discretion in excluding this juror from the panel. Moreover, the state did not exhaust its peremptory challenges so that, even if not excused for cause, Juror Green could have been excluded. We find no error in excluding Juror Green  nor, in fact, in excluding the other five jurors who were challenged for cause on capital-punishment grounds.
The appellant also argues that the systematic exclusion of jurors opposed to the death penalty "tends to deny appellant an impartial jury with regard to the issue of guilt," contrary to the due process clause of the Fourteenth Amendment. A similar contention was dealt with by the United States Supreme Court in the Witherspoon case, supra, as follows:
"We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction. In light of the presently available information, we are not prepared to announce a per se constitutional rule requiring the reversal *877 of every conviction returned by a jury selected as this one was." 391 U.S. at p. 518, 88 S.Ct. at pp. 1774, 1775, 20 L.Ed.2d at p. 782.
Thus, even if error had been committed in excluding Juror Green  and, as noted, we do not so find  the error would not have warranted a new trial on the question of guilt.
The appellant next contends that this court should recede from its views concerning the defense of insanity and abandon the "right or wrong" test of McNaghten's case. We have reconsidered this question in the light of argument of counsel for the appellant and have concluded again as we did in Piccott, supra, 116 So.2d 626, in Van Eaton v. State, Fla. 1967, 205 So.2d 298, and in Holston v. State, Fla. 1968, 208 So.2d 98, that the "right or wrong" test is the best available rule for determining the question of the legal accountability of the accused for his criminal act. Accordingly, this contention cannot be sustained.
The next assignment of error relates to the exclusion of the proffer of testimony of a psychiatrist that appellant, though able to distinguish between right and wrong, "had little control over his impulsive behavior, and might not be able to conform his acts to the requirements of the law." Appellant's argument is that this testimony is relevant to the question of whether to recommend mercy and that to exclude such testimony is to deny him a fair consideration of this question to his prejudice. While this argument has some appeal, it is well settled that this type of evidence is not relevant to the question of whether or not an accused is legally insane under the McNaghten "right or wrong" test of insanity. See Hall v. State, 1919, 78 Fla. 420, 83 So. 513, 8 A.L.R. 1034; Evans v. State, Fla.App. 1962, 140 So.2d 348. So long as the courts of this state are bound to follow the one-stage trial proceeding in which the jury's verdict must be accompanied by its recommendation to mercy, if made, rather than the two-stage trial adopted in some jurisdictions, see Craig v. State, Fla. 1965, 179 So.2d 202, it must be held that such evidence is inadmissible as having a tendency to confuse the jury in its determination of the question of the guilt of the accused. Accordingly, this contention cannot be sustained.
Moreover, the record shows that this type of evidence was, in fact, elicited by counsel for the appellant, over the objection of the state, on cross examination of the state's witness, a doctor who had examined the appellant and testified as to his legal insanity. We think the appellant cannot be heard to complain of any prejudice in this respect, as a legal or as a practical matter.
The appellant's next assignment of error is that "The trial judge erred in giving to the jury an instruction as to the felony-murder rule (robbery)." The record shows that such an instruction was requested by defense counsel and was given by the trial judge, word for word, as requested except for the omission of the following statement contained in the instruction as requested by counsel for the defense:
"However, if the perpetrator of the robbery had won his way, even momentarily, to a place of temporary safety and if the possession of the plunder was more than a scrambling possession, then the robbery was completed within the purview of the law and a killing which occurs thereafter cannot be said to be concurrent with the robbery."
The above quoted statement is said to be taken from the opinion of this court in Hornbeck v. State, Fla. 1955, 77 So.2d 876. In that case the question was whether the accused could be convicted as a principal in the second degree of a murder committed by a confederate while attempting to escape from the scene of the crime. We said that the crime had not been completed within the purview of the rule making *878 one who aided and abetted in the perpetration of a robbery equally guilty with the other principal who actually committed the felony-murder,
"* * * inasmuch as said conspirators have not won their way even momentarily to a place of temporary safety and the possession of the plunder is nothing more than a scrambling possession. In such a case the continuation of the use of arms which was necessary to aid the felon in reducing the property to possession is necessary to protect him in its possession and in making good his escape."
quoting from People v. Boss, 210 Cal. 245, 290 P. 881, 883. This is a correct statement of the law applicable to the question of whether the jury had the right to find Hornbeck guilty of a crime committed by his partner, Goldman. But we think the trial judge was eminently correct in deleting from the instruction defense counsel's paraphrase of the rule, as first quoted above. The statement is inconsistent with the rule stated in Jefferson v. State, Fla. 1961, 128 So.2d 132, quoting Warren, Homicide, page 332, to the effect that
"Whether the felony was technically completed, is not of itself sufficient to take the case out of the category of felony murders. It is a homicide committed during the perpetration of a felony, if the homicide is part of the res gestae of the felony."
The instruction applicable to the facts of the instant case was correctly given by the trial judge to the jury, as follows:
"A person may be said to be engaged in the commission or perpetration of a robbery while he is endeavoring to escape and make away with the property taken in such robbery."
Counsel for appellant argues also that the felony-murder instruction should not have been given because the evidence showed that no one law officer pursued the appellant continuously and uninterruptedly from the time of the robbery until his apprehension at the road block, and because the crime of robbery came to an end when appellant was "arrested" by Deputy Fish. He concludes that "two separate matters operated to disrupt the continuity between the two crimes, so that the homicide was not committed in perpetration of robbery." We have examined this contention. It is likewise without merit.
The evidence shows that the appellant was tracked by law enforcement officials, via radio communication, from the time of the robbery up to his apprehension at the road block about an hour later. No sooner did he evade one pursuer than he was "picked up" by another and the chase continued. He himself testified that the reason he was travelling at the rate of 125 to 130 miles per hour just before the encounter with Deputy Fish was because "the man [meaning Deputy Fish] was after me." He said also that the reason he was running was because he had committed a felony in Georgia.
It is inescapable that the actions of the appellant followed an inexorable course from the time of the robbery to the death of Deputy Fish: the appellant's flight from the scene of the crime in full view of witnesses; the tracking down of appellant via radio communication among the various law enforcement officers; his apprehension by Deputy Fish; and his seizing of the opportunity to resist the arrest and continue his flight, resulting in the death of Deputy Fish. Although separated by time and space from the original felony, as here contended on behalf of the appellant, it is clear that, in the circumstances, the death of Deputy Fish was the inevitable result of and an integral part of the same transaction, i.e., the robbery. Cf. Jefferson v. State, supra, 128 So.2d 132. We think the able trial judge was eminently correct in giving the instruction on felony-murder.
*879 Some contention is made that the trial judge should have given a requested charge on "asportation." This instruction might be proper in some circumstances but is clearly not applicable here. We find no error in this respect.
Finally, the appellant assigns as error the sufficiency of the evidence to support his conviction. We have read the entire record and have concluded that the evidence abundantly supported the verdict of guilty. The circumstances of the robbery and the flight recounted above are ample to support a verdict of guilty of a felony murder; and we think the jury could also have inferred that the shooting of Deputy Fish was premeditated. As noted, the jury had the right to find that the appellant fired two shots at Deputy Fish in resisting the arrest, after which he fled in the patrol car. When asked why he left the scene of the murder if he didn't shoot Deputy Fish, the appellant replied only "If I had an answer I could give it to you." In our opinion, a verdict of guilty of premeditated murder was also supported by the evidence.
For the reasons stated, the judgment should be and it is hereby
Affirmed.
ERVIN, C.J., and DREW, THOMAS (Retired) and CALDWELL (Retired), JJ., concur.