386 So.2d 825 (1980)
Nathaniel TAYLOR, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 77-959, 77-1198.
District Court of Appeal of Florida, Third District.
August 5, 1980.
*826 Bennett H. Brummer, Public Defender and Elliot H. Scherker, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Susan Minor, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, BASKIN and PEARSON, DANIEL, JJ.
BASKIN, Judge.
In these consolidated appeals, Nathaniel Taylor seeks to overturn convictions and sentences for murder, false imprisonment, robbery, and conspiracy to commit robbery. Taylor also challenges the revocation of his former probationary status and the imposition of a life sentence for that crime.
In 1972, Taylor pled guilty to a charge of robbery and was placed on seven years probation, adjudication withheld. Two years later, defendant admitted he violated his probation. The court entered an adjudication of guilt and imposed a seven year prison sentence to be served by one year in prison followed by six years probation. Another two years elapsed and defendant was charged, with two other persons, with first degree murder, kidnapping, robbery, and conspiracy to commit robbery. These last charges stemmed from the criminal activity described below.
Taylor's co-defendant, David Washington, appears to have directed the events that led to the death of Frank Meli.[1] Washington and Defendant Taylor are step-brothers. They resided in a home owned by Taylor's father. On the date in question, Washington arranged to meet Frank Meli to discuss an automobile Meli had offered for sale. Washington asked Defendant Taylor and another defendant, Mills, to be at the house when Washington later returned with Meli. Mills and Taylor agreed.
When Meli entered the house, he was tied up. Washington took his cash, jewelry, and the keys, title and registration to Meli's car. Leaving the victim with Taylor and Mills, Washington sold Meli's car, receiving a check for $2,600.
That evening, Washington telephoned the victim's brother and demanded that $2,700 be left at a designated location. The defendants never picked up the money even *827 though it was placed at the location. The victim's brother contacted the Public Safety Department.
The following day, Washington cashed the check he had received for Meli's car and gave both Taylor and Mills a portion of the money. Later that day, Taylor first saw, and later heard, Washington attack Meli with a knife. He then helped Washington bury Meli in the back yard.
The police investigation of the kidnapping led them to the house where Taylor and Washington lived. During their surveillance, the police saw Taylor leaving the home and asked him to come to the police station.
At the station, the officers obtained Taylor's consent to search the house. Another officer then located Taylor's father, the owner of the residence, who executed a "consent to search" form. While this conversation with the defendant's father was taking place, another detective searched the premises and discovered numerous items of incriminating evidence.
Taylor was at the police station during the search. After Meli's body was found, Taylor made incriminating statements to the police.
Prior to trial, Taylor moved to suppress both the physical evidence seized during the search of the house and the statements he made to the police. He argued that his consent to the search was insufficient. Taylor also claimed that his statements were involuntary and a result of physical coercion. The trial court allowed three witnesses, who were not named on the state's witness list, to testify over objection at the hearing on the motion to suppress. At the conclusion of the hearing, the trial court denied the motion to suppress both the physical evidence and the incriminating statements, finding Taylor's consent to search valid and his statements voluntary.
Ultimately, a jury returned verdicts finding defendant guilty as charged of first degree murder, robbery with a deadly weapon, and conspiracy to commit robbery, and guilty of false imprisonment as a lesser included offense of the kidnapping charge. He was sentenced to life imprisonment for the first degree murder upon the jury's recommendation, five years for false imprisonment, life for robbery, and fifteen years for conspiracy to commit robbery, each term to be served at the expiration of the last. In addition, the trial court utilized the trial testimony as the basis for finding the defendant in violation of his probation for the 1972 robbery. Taylor's probation was revoked, and the trial court imposed a sentence of life imprisonment.
Defendant asks this court to reverse his convictions and sentences on several grounds. After considering defendant's contentions and the applicable law, we find merit in certain of his arguments but reject the remainder of his claims for reasons we will discuss.
Taylor first argues that the evidence obtained during the warrantless search of the house should have been suppressed because he could not consent to a search of property he did not own and because a child cannot consent to a search of the property of a parent. There is no merit in either argument. Consent may be given by the owner or rightful possessor of property when the evidence seized is to be used against him, rather than against another person. Silva v. State, 344 So.2d 559 (Fla. 1977). In advancing the second argument, Taylor relies on Padron v. State, 328 So.2d 216 (Fla. 4th DCA 1976). Padron is not applicable to this case. Taylor was twenty-one years old and, in the legal sense, consented to the search of his own property, not that of his father.
Defendant's second point on appeal claims error in the denial of his motion to exclude the testimony of three prosecution witnesses at the hearing on the motion to suppress statements because, although Taylor had invoked reciprocal discovery, the state had failed to furnish him with the names of the witnesses. Taylor contends that the trial court failed to conduct a full inquiry into the matter in contravention of the guidelines established by Richardson v. State, 246 So.2d 771 (Fla. 1971).
*828 In denying the motion to exclude the witnesses, the court impliedly found that defendant had not been prejudiced by the state's failure to furnish the witnesses' names. Because the testimony was cumulative and corroborative of the testimony of listed witnesses, Lucas v. State, 376 So.2d 1149 (Fla. 1979), we find no error.
Permitting the state to call the unlisted witnesses could not adversely affect defendant's ability to prepare for trial since these proceedings occurred well in advance of trial. The voluntary nature of the statements would be presented again for the jury's determination, at trial. These circumstances establishing no prejudice to the defendant affirmatively appear in the record. Richardson v. State, supra.
After the jury returned its verdicts, the court imposed sentence upon Defendant Taylor and also revoked the term of probation, "having determined from the evidence in this case that there has been a violation of the terms of that probation." Defendant contends that this procedure deprived him of proper notice and the requisite hearing prior to the revocation of his probation. He relies on State v. Spratling, 336 So.2d 361 (Fla. 1976), for the proposition that, in the absence of a stipulation or consent, the criminal trial should not be construed as a probation revocation hearing.
We find no error in the use of the trial testimony at the probation violation hearing under the circumstances of this case. The defendant had notice of the charges by virtue of the affidavit of violation filed five months prior to the trial predicated upon the same charges for which the defendant was tried.
The affidavit and notice furnished to defendant gave him ample opportunity to prepare his defense. He was also afforded a full hearing with counsel at trial.
In the final analysis, we cannot see what purpose would be served in this case by a reversal of the probation revocation for a further proceeding at which time appellant's conviction could be introduced as the basis for revoking his probation. We find that the appellant was afforded due process by the procedure which was followed.
Franklin v. State, 356 So.2d 1352, 1353 (Fla.2d DCA 1978).
When the trial court revoked defendant's probation, it imposed a sentence of life imprisonment. Taylor now argues that the life sentence constitutes double jeopardy because he had previously been sentenced to a prison term for that offense. We disagree. Upon revocation of probation, the court may impose any sentence which could originally have been imposed. State v. Jones, 327 So.2d 18 (Fla. 1976).
The next issue presented for this court's consideration is whether the fifteen year sentence for conspiracy to commit robbery is excessive.
Since the robbery which is the subject of the conspiracy was not alleged to have involved the use of a firearm or deadly weapon, the sentence of fifteen years imprisonment was excessive. Chapola v. State, 347 So.2d 762 (Fla. 1st DCA 1977). Robbery without the use of a firearm or a deadly weapon is a second degree felony. § 812.13(2)(c), Fla. Stat. (1977). A conspiracy to commit a felony of the second degree is a third degree felony, § 777.04(4)(c), Fla. Stat. (1977), punishable by a maximum of five years imprisonment. § 775.082(3)(d), Fla. Stat. (1977).
We, therefore, reduce defendant's sentence for conspiracy to commit robbery to five years, the maximum sentence allowed by law.
The last point raised by the defendant is whether his convictions for both first degree murder and robbery, for which defendant was convicted in Count III, are constitutionally permissible when the same robbery was charged as the underlying felony in the first degree murder charge. Because evidence of premeditation was insufficient to support a conviction of premeditated first degree murder, the defendant could have been convicted of first degree murder only under a felony murder theory. Since the jury found defendant guilty of *829 the lesser offense of false imprisonment on the kidnapping charge, the only felony which could support a first degree felony murder verdict is the robbery charged in Court III. An accused may not be convicted of both felony murder and the underlying felony on which that murder conviction was based. Harris v. Oklahoma, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); State v. Wright, 379 So.2d 96 (Fla. 1979); Mahaun v. State, 377 So.2d 1158 (Fla. 1979); and State v. Pinder, 375 So.2d 836 (Fla. 1979). We therefore reverse the conviction for robbery.
The state sought to prove the charge of felony murder by proving that the victim's death occurred during the commission of the felony of robbery. Defendant now argues that the trial court failed to instruct the jury sufficiently on the elements of the underlying felony of robbery. We disagree.
The trial court charged the jury pursuant to standard jury instructions for robbery stating:
It is the crime of robbery for any person to take money or other property of any value, whatsoever, from the person or custody of another by force, violence, or assault, or putting in fear.
The essential elements of this offense which must be proved beyond a reasonable doubt before there can be a conviction in this case are that: [1] the defendant did take from the person or immediate custody of Frank Vincent Meli the money or property described in the Indictment, [2] the property was taken against the will of Frank Vincent Meli and [3] the taking was by means of force, violence, or assault or by putting Frank Vincent Meli in fear.
Defendant contends that this instruction is deficient because it does not inform the jury that intent to permanently deprive another of property is a requisite element of the crime of robbery. Bell v. State (Fla. 1980) (Case No. 53,440, opinion filed March 6, 1980).
The elements of the underlying felony, however, need not be explained with the same particularity that would be required if that offense were the primary crime charged. The true test is whether the underlying felony has been defined sufficiently to insure the defendant a fair trial. State v. Jones, 377 So.2d 1163 (Fla. 1979); Vasil v. State, 374 So.2d 465 (Fla. 1979); and Robles v. State, 188 So.2d 789 (Fla. 1966). The instruction given to the jury in this case adequately described the offense of robbery for purposes of insuring the defendant a fair trial.
For the foregoing reasons, we reverse defendant's conviction for robbery and correct his sentence for conspiracy to commit robbery. In all other respects, the judgments and sentences are affirmed.
NOTES
[1] Defendant Washington pled guilty and was sentenced to death. His sentence was upheld by the supreme court. Washington v. State, 362 So.2d 658 (Fla. 1978).