407 So.2d 218 (1981)
Johnnie Gary MILLS, Appellant,
v.
The STATE of Florida, Appellee.
No. 77-941.
District Court of Appeal of Florida, Third District.
October 6, 1981.
On Rehearing December 8, 1981.
*220 Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Paul Mendelson, Asst. Atty. Gen., for appellee.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
Mills appeals his convictions for first degree murder, kidnapping for ransom or reward, robbery with a deadly weapon, and conspiracy to commit robbery.
The facts of this case have been stated in one form or another in prior opinions addressing the appeals of Mills' co-defendants, Nathaniel Taylor and David Washington.[1] For purposes of the present appeal, we add to those recitations certain facts pertaining to Mills' involvement in this kidnapping-robbery scheme which ended with the killing of Frank Meli.
The evidence of Mills' involvement substantially comes from his own voluntary statement to the police. Mills knew of, and agreed to participate in, Washington's plan to respond to a newspaper advertisement with the intent to lure a prospective car seller to Taylor's house, to steal the victim's car, and to hold him captive in order to sell the car. Meli had the misfortune to place the ad which Washington answered. On September 28, 1976, Mills and Taylor were hiding in the bedroom of the house when Washington brought Meli there. Mills helped tie up Meli while Washington wielded a knife. In the course of things, Washington took Meli's money, and Mills was given a share of this stolen property.
Washington succeeded in selling the car to a car dealer that same afternoon, but did not succeed in cashing the car dealer's check. Washington returned to the house where Mills and Taylor held Meli. Mills gave Washington a photograph for use as identification in cashing the check.[2] On the following day, September 29, 1976, Washington succeeded in cashing the check, returned to the house with $2,900, and gave Mills a share of this money.
On at least six occasions between September 28 and 29, 1976, Mills left and returned to the house where Meli was held captive. When he left the house after Washington's return in the early afternoon of September 29, Meli, still captive, was alive. Later that afternoon, when Mills and Taylor met downtown, Taylor told him that in Mills' absence he saw Washington and Meli fight and Washington stab Meli. Taylor told Mills that he left the house after the stabbing.
The evidence also revealed that during Washington's check cashing trip Washington called Meli's brother and made a ransom demand. Mills denied any knowledge of this, and there is no evidence to prove that he knew of the demand or Washington's intention to make it.
Mills' primary contentions are that in light of these undisputed facts, his convictions for kidnapping for ransom or reward and felony murder cannot stand.
We first turn to the conviction for kidnapping for ransom or reward. The State candidly and properly concedes that the conviction for this offense is not supported by sufficient evidence. That being the *221 case, the only question is whether the evidence that Mills participated in Meli's kidnapping with the intent to steal his car supports the conviction for kidnapping.
Section 787.01(1)(a), Florida Statutes (1975), provides, in pertinent part:
"`Kidnapping' means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against his will and without lawful authority, with intent to:
"1. Hold for ransom or reward or as a shield or hostage.
"2. Commit or facilitate commission of any felony...."
Mills was specifically and only charged with kidnapping with the intent to hold the victim for ransom or reward. The gist of the offense with which Mills was charged is the specific intent to hold for ransom, and it is that intent, and no other, which must be proved to support the charge. Keith v. State, 120 Fla. 847, 163 So. 136 (1935); Finch v. State, 116 Fla. 437, 156 So. 489 (1934). Cf. Jones v. State, 385 So.2d 1042 (Fla. 1st DCA 1980) (failure to specify the exact felony the defendant was charged with intending to commit or facilitate the commission of in connection with a kidnapping charge renders the information vague and indefinite). The State was free to charge Mills with kidnapping with the intent to commit or facilitate the commission of robbery, a crime that doubtless was proved. For no apparent reason, it chose not to. We reverse the conviction for kidnapping and reduce the conviction on this charge to the lesser included offense of false imprisonment, which requires no such proof of specific intent.[3]
Although the first degree felony murder conviction is not sustainable by the kidnapping, we affirm Mills' murder conviction[4] because it is sustained by the evidence which shows that Mills aided and abetted and was personally present during the perpetration of the robbery of Meli. The fact that the taking of Meli's money and car had been accomplished some twenty-four hours before the killing occurred did not, under the facts of the present case, terminate the robbery so that it could no longer constitute the underlying felony for felony murder purposes. In the absence of some definitive break in the chain of circumstances beginning with the felony and ending with the killing, the felony, although technically complete, is said to continue to the time of the killing.[5]Jefferson v. State, 128 So.2d 132 (Fla. 1961). Neither the passage of time nor separation in space from the felonious act to the killing precludes a felony murder conviction when it can be said, as it can be so readily here, that the killing is a predictable result of the felonious transaction. Campbell v. State, 227 So.2d 873 (Fla. 1969). Most certainly in this case, where Meli remained in continuous captivity from the commencement of the felony until his death, the nexus between *222 the robbery and his death is clear.[6]Jefferson v. State, supra; Archibald v. State, 77 Nev. 301, 362 P.2d 721 (1961). See generally Annot., "What Constitutes Termination of Felony for Purposes of Felony-Murder Rule," 58 A.L.R.3d 851 (1974); R. Perkins, Criminal Law, Ch. 2, § 1, 42-43 (2d ed. 1969).
Similarly, the fact that Mills was not present when Washington killed Meli is of no help to Mills in avoiding responsibility for the killing. Mills was indisputably present, aiding and abetting Washington in the perpetration of the robbery. That being so, under the revived distinction for felony murder purposes between principals and accessories before the fact, see Adams v. State, 341 So.2d 765 (Fla. 1976); State v. Dixon, 283 So.2d 1 (Fla. 1973), Mills was a principal in the second degree and within the ambit of the first degree felony murder statute. Enmund v. State, 399 So.2d 1362 (Fla. 1981). Compare Hite v. State, 364 So.2d 771 (Fla.2d DCA 1978) (persons who aided in the planning of the felony and were not personally present at its commission were accessories before the fact and, in light of the Adams-Dixon rule, not "persons engaged" within the first degree felony murder statute) with Marcum v. State, 379 So.2d 974 (Fla. 1st DCA 1979) (person constructively present at felony subject to first degree felony murder statute).[7] Simply stated, liability for felony murder attaches when the defendant is personally or constructively (as in the case of lookouts or getaway drivers) present at the scene of the commission of the felony, notwithstanding that the same defendant is absent when the killing occurs. As the Florida Supreme Court said in Goodwin v. State, 405 So.2d 170 (Fla. 1981):
"Appellant's presence during the actual killings is simply irrelevant for the purposes of this issue; the critical fact is his participation in the underlying felony."
Our holding that Mills' conviction for first degree felony murder must be affirmed requires us to vacate and set aside the sentence imposed on the underlying felony of robbery. Hegstrom v. State, 401 So.2d 1343 (Fla. 1981).[8] Finding further that the thirty-year concurrent sentence imposed on Mills for conspiracy to commit robbery is in excess of the maximum allowed by law, Taylor v. State, 386 So.2d 825 (Fla.3d DCA 1980), we reduce that sentence to five years. See §§ 812.13(2)(c), 777.04(4)(c), 775.082(3)(d), Fla. Stat. (1975).
In sum, Mills' convictions for first degree murder, robbery and conspiracy to commit robbery are affirmed; his conviction for kidnapping is reduced to false imprisonment; *223 his sentence for robbery is vacated; his sentence for conspiracy to commit robbery is reduced to five years; and the cause is remanded to the trial court for imposition of sentence on false imprisonment.
Affirmed in part; reversed in part, and remanded.

ON PETITION FOR REHEARING
DANIEL S. PEARSON, Judge.
On rehearing, the State contends that despite our reversal of Mills' conviction for the charged offense of kidnapping for ransom or reward, the evidence that Mills kidnapped with intent to commit or facilitate the commission of a felony supports Mills' felony murder conviction. Therefore, the State says, since the robbery was not the only underlying felony proved, we should not have vacated the robbery sentence. See, e.g., King v. State, 390 So.2d 315 (Fla. 1980); State v. Pinder, 375 So.2d 836 (Fla. 1979).
The problem here is that while the offense of kidnapping with intent to commit or facilitate the commission of a felony was concededly shown by the evidence, kidnapping was never defined for the jury in those terms. Thus, under the instructions given the jury, there is simply no basis for us to conclude that the jury could well have found the defendant guilty of a distinct and separate kidnapping offense, Keith v. State, 120 Fla. 847, 163 So. 136 (1935); Finch v. State, 116 Fla. 437, 156 So. 489 (1934), which, for all the jury knew, did not exist. While we are willing to indulge assumptions about what a jury may have found, see, e.g., McCray v. State, 397 So.2d 1229 (Fla.3d DCA), review granted, Case No. 60,667, October 5, 1981 (Fla. 1981), we can only do so where both the proof and the jury instructions will support such assumptions. See State v. Jones, 377 So.2d 1163 (Fla. 1979); Robles v. State, 188 So.2d 789 (Fla. 1966). We have reviewed the other grounds for rehearing asserted by the State and find them to be without merit.
We have also considered Mills' petition for rehearing. We did not overlook three other points raised by Mills. In our view, these points were without merit and required no discussion in our original opinion and require none now. While occasionally this court's opinions conclude with the line, "We have reviewed the other points on appeal raised by appellant and find them to be without merit," or a like statement, the absence of such language should not be taken to mean that we have overlooked points which we felt no need to address.
The petitions for rehearing are granted. We adhere to our original opinion.
NOTES
[1] Mills, David Washington and Nathaniel Taylor were charged in a single indictment. Washington pleaded guilty to the crimes charged in the indictment, as well as to two separate murders and other crimes with which neither Mills nor Taylor had any connection. Washington was sentenced to death, and that sentence was affirmed. See Washington v. State, 362 So.2d 658 (Fla. 1978). Taylor's convictions for murder, false imprisonment, and conspiracy to commit robbery were affirmed; his conviction for robbery was reversed. Taylor v. State, 386 So.2d 825 (Fla.3d DCA 1980).
[2] Apparently, title to the car was in the name of Meli's mother, and the dealer made the check payable to her. On September 29, 1976, Washington produced the photograph given him by Mills at the bank, informed the bank officer that the photograph was of his mother, the payee on the check, and when the car dealer called the bank and instructed it to make payment, it did.
[3] There is no specific holding in Florida that false imprisonment is a necessarily lesser included offense of kidnapping. Every state which has addressed the relationship between these offenses where defined in substantially identical language to that contained in Florida has concluded that false imprisonment is a necessarily lesser included offense of kidnapping. See Annot., 68 A.L.R.3d 828 (1976). See also In the Matter of the Use by the Trial Courts of the Standard Jury Instructions in Criminal Cases (Fla. 1981) (Case Nos. 57,734 and 58,799). But see Yuanis v. State, 347 So.2d 448 (Fla.3d DCA 1977); Swyers v. State, 334 So.2d 278 (Fla.3d DCA 1976); In the Interest of T.L.T., 324 So.2d 200 (Fla.4th DCA 1975) (affirming convictions for both false imprisonment and kidnapping without comment). Mills makes no contention that false imprisonment is not such an included offense and, indeed, requests the reduction.
[4] The indictment charges first degree murder. There is, however, as the State concedes, no evidence of premeditation, and the charge is sustainable only on a felony murder theory.
[5] As was pointed out in Bissot v. State, 53 Ind. 408 (1896), and State v. Brown, 7 Or. 186 (1879), the application of a rule of technical termination of the felony would produce the absurd result that felony murder would be precluded in all instances where the killing followed the "completion" of the felony. The rule of technical termination has, however, been used to separate the crimes for sentencing purposes. See Hearns v. State, 378 So.2d 70 (Fla.3d DCA 1979).
[6] Under this analysis, kidnapping or false imprisonment, themselves continuous crimes, must always support a felony murder when the killing occurs during the victim's captivity. And where the death of a kidnapped infant occurs as a result of the abandonment of the child, the defendant's abandonment of the child consigning it to almost certain death is a felony murder, not an abandonment of the kidnapping. LaMarca v. People, 3 N.Y.2d 452, 165 N.Y.S.2d 753, 144 N.E.2d 420, remittitur amended, 3 N.Y.2d 933, 167 N.Y.S.2d 955, 145 N.E.2d 892, cert. denied, 355 U.S. 920, 78 S.Ct. 351, 2 L.Ed.2d 279 (1957).
[7] Some confusion has apparently arisen from the use of language which mixes presence at the commission of the felony with presence at the killing. See, e.g., Hite v. State, supra, at 772 (where the court stated that a defendant must "be personally present aiding and abetting the commission of the felony when the killing occurs"); Lowery v. State, 375 So.2d 1075 (Fla.4th DCA 1980) (where the court, although dealing with a classic accessory before the fact charged with second degree felony murder, defined the issue as being whether "an individual who aids and abets the commission of the underlying felony but who is not present at the murder can be convicted pursuant to said statute"); Marcum v. State, supra, at 977 (where the court, although dealing with a classic principal in the second degree, read Hite to require personal presence "at the scene when the killing occurred," and distinguished Hite on the ground that "[e]ven the Hite case does not require that the homicide must be committed within the range of vision of the felons engaged in the perpetration of the underlying felony.") (all emphasis supplied). Presumably, Goodwin v. State, infra, removes any confusion.
[8] Mills' co-defendant Taylor was the beneficiary of the pre-Hegstrom ruling in State v. Pinder, 375 So.2d 836 (Fla. 1979), which we had read to require that the conviction for the underlying felony, not merely the sentence, be set aside. See Taylor v. State, 386 So.2d 825 (Fla.3d DCA 1980).