510 So.2d 304 (1986)
STATE of Florida, Appellant,
v.
Brian HACKER, Appellee.
No. 85-2413.
District Court of Appeal of Florida, Fourth District.
October 15, 1986.
*305 Jim Smith, Atty. Gen., Tallahassee, and Joan Fowler Rossin, Asst. Atty. Gen., West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Margaret Good, Asst. Public Defender, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
GUNTHER, Judge.
We grant appellee's motion for rehearing but treat it as a motion for clarification. Accordingly, the following clarified opinion is substituted for our August 27, 1986 opinion.
The state appeals the order granting defendant Brian Hacker's motion to dismiss Count I of the indictment charging him with one count of first-degree felony murder (Count I), four counts of robbery with a deadly weapon, one count of illegal possession of a sawed-off shotgun, one count of vehicular homicide, one count of carrying a concealed firearm, and one count of grand theft. We reverse.
The facts set forth in the motion to dismiss were as follows:
On December 2, 1984, between the hours of approximately 7:00 p.m. to 8:00 p.m. several robberies occurred in the Boynton Beach area. The last two (2) of these robberies occurred at a Mobil and Amoco gas station [sic] located at the Northeast and Southeast corners respectively of the intersection of Seacrest and Hypoluxo. The suspects fled the immediate vicinity in a 1977 blue Chevrolet Camaro taken from the attendant at the Amoco gas station.
The suspects proceeded north on to I-95 via the Hypoluxo interchange and at approximately the underpass of I-95 and Lantana Road the 1977 Chevrolet Camaro became involved in a [sic] accident with a 1983 Mazda driven by Jose Diaz. Mr. Diaz later died as a result of the injuries he sustained in the collision.
A witness to the Amoco gas station robbery, Frank Mazzariello, attempted to follow and observe the 1977 Chevrolet Camaro but was unable to do either after the Camaro accelerated to approximately eighty-five (85) miles per hour along the northbound I-95 entrance ramp. When Mr. Mazzariello last saw the Camaro on the northbound I-95 entrance ramp there was no other person or persons in actual pursuit.
When the defendants Brian Hacker and Michael Westover were taken into custody, both of them made statements to [Palm Beach County] Sheriff's Detectives Jack Strenges and Jim Brooks.
The defendant Michael Westover stated the accident resulting in the death of Mr. Diaz was caused by a quarrel he had with the defendant Brian Hacker. The defendant Hacker, while arguing that the Camaro should not have been taken, attempted to grab the wheel causing Westover, who was driving, to lose control of the car and collide with the Mazda driven by Mr. Diaz.
Brian Hacker, when questioned, stated he argued with his co-defendant over the Camaro's speed and requested that the car be stopped and for them to take a taxi. During the argument the Camaro was involved in the accident but he does not know how.
At the hearing the State orally traversed the motion, as it was not given adequate time to present a written traverse. Appellee agreed with the oral traverse that Mr. Mazzariello lost sight of the Camaro on the entrance ramp to I-95 but did not stop until he came upon the automobile accident scene and that both defendants had already fled the scene of the accident. This fatal accident occurred approximately five minutes after appellee and Westover had committed the two robberies. Mr. Mazzariello had been unable to keep up with the Camaro even though he exceeded the speed limit. However, he did reach the accident scene within two minutes.
*306 We hold that the trial court erred in granting appellee's motion to dismiss, because the homicide is alleged to have occurred during the perpetration of, and flight from, a robbery. The facts presented in the motion to dismiss and the oral traverse were sufficient to establish a prima facie case of first degree felony murder.
In Campbell v. State, 227 So.2d 873 (Fla. 1969), cert. dismissed, 400 U.S. 801, 91 S.Ct. 7, 27 L.Ed.2d 33 (1970), a robbery defendant was tracked by law enforcement officials of two different states until he was stopped by a roadblock. The defendant then shot a police officer. The Florida Supreme Court held that the robbery did not come to an end until the car stopped, and that the murder was sustainable under a felony murder theory. The Campbell court stated: "No sooner did [Mr. Campbell] evade one pursuer than he was `picked up' by another and the chase continued." Id. at 878. These facts are similar to those in the instant case where Frank Mazzariello pursued appellee, lost sight of him, and continued pursuing him until he came upon the scene of the accident some two minutes later.
While other jurisdictions may have a hard and fast rule that a suspect, in order to be convicted of a felony murder, must be pursued by a police officer when the death occurs, there is no such rule in Florida. One of the issues on appeal in Campbell was the giving of the following instruction to the jury: "A person may be said to be engaged in the commission or perpetration of a robbery while he is endeavoring to escape and make away with the property taken in such robbery." Campbell, 227 So.2d at 878. The supreme court approved this instruction which we note did not include a qualification that the "escape" had to be from a pursuing law enforcement officer.
The supreme court noted in Campbell: "[A]lthough separated by time and space from the original felony ... it is clear that, in the circumstances, the death ... was the inevitable result of and an integral part of the same transaction, i.e., the robbery." Id. This analysis is equally applicable to the case at bar. In the instant case, the killing was a predictable result of the felonious transaction. See Mills v. State, 407 So.2d 218, 221 (Fla. 3d DCA 1981). The motor vehicle accident and resulting death caused by suspects fleeing the scene of the robbery at a very high rate of speed were reasonably foreseeable.
The purpose of the felony murder statute is to protect the public from inherently dangerous situations:
The test we suggest is predicated upon the obvious ultimate purpose of the felony-murder statute itself which is, we think, to prevent the death of innocent persons likely to occur during the commission of certain inherently dangerous and particularly grievous felonies. The method employed by the statute to accomplish this purpose is, of course, to create a deterrent to the commission of such felonies by substituting the mere intent to commit those felonies for the premeditated design to effect death which would otherwise be required in first degree murder if someone were killed in the commission thereof.
State v. Williams, 254 So.2d 548, 550-51 (Fla. 2d DCA 1971) (footnote omitted).
We are of the opinion that the facts in the instant case constitute an "inherently dangerous situation" which was created by the appellee and his cohort as they fled the scene of the robbery. Furthermore, they had not reached a place of safety before the accident occurred that resulted in the death of Mr. Diaz. Thus, the felony had not been completed and the state has established a prima facie case for felony murder.
We reverse the order granting appellee's motion to dismiss Count I and remand for further proceedings.
REVERSED AND REMANDED.
GLICKSTEIN and STONE, JJ., concur.