570 So.2d 1048 (1990)
James Robert PARKER, Appellant,
v.
STATE of Florida, Appellee.
No. 89-2662.
District Court of Appeal of Florida, First District.
November 27, 1990.
Rehearing Denied January 7, 1991.
*1050 Harry R. Barksdale, Milton, for appellant.
Robert A. Butterworth, Atty. Gen., Carolyn J. Mosley, Asst. Atty. Gen., Tallahassee, for appellee.
WOLF, Judge.
James Robert Parker appeals from his conviction and sentence for second degree felony murder, armed robbery, and kidnapping. The issues raised are as follows: 1) Whether there was sufficient evidence to support the conviction for second degree felony murder; 2) whether the trial court erred in excluding evidence of police negligence as an intervening cause in the death of the victim; 3) whether there was sufficient evidence that the appellant was the perpetrator of the robbery and kidnapping; 4) whether the trial court erred in denying the motion for a judgment of acquittal on the charge of kidnapping because the crime was never completed; 5) whether the trial court erred in imposing a three-year mandatory-minimum sentence for possession of a firearm during the commission of a robbery; and 6) whether the split sentence imposed on the appellant violates the constitutional prohibition against double jeopardy. We find issue 3 to be without merit and affirm without discussion. As to the other issues, we affirm for the reasons addressed herein.
On December 3, 1988, at about 7:00 o'clock in the evening, Ralph Stewart was driving along Interstate 10 in Santa Rosa County when he experienced engine trouble. Mr. Stewart pulled into a rest area to determine the source of the problem. Two men approached him and asked him if he needed any help. Stewart refused the offer. The appellant's codefendant (the appellant's brother) then pulled out a pistol and held it to the side of the victim's head. The appellant took a number of items from the victim's pockets, including some cash and a change purse. While the robbery was going on, the appellant then jammed an object into the victim's back, but the victim was unable to determine what it was. The robbers then shoved the victim into the trunk of his car. They attempted to close and lock the trunk lid; however, Stewart was able to block the latching mechanism with his coat, thus, preventing the trunk from locking.
Stewart stayed in his trunk, holding the latch down until he heard the men leave. He then got out of the trunk and spent approximately five minutes searching for his glasses and his extra set of car keys.
Mr. Stewart got into his car and went to a nearby convenience store. At the store, Mr. Stewart saw one of the men who robbed him filling his car with gas. Mr. Stewart went inside and saw the other man who had robbed him. This man was holding Stewart's change purse which had been taken during the course of the robbery. Stewart approached the man and grabbed the purse out of his hand and told him that it was his. At that point, the man ran outside and told his partner that they had to leave quickly. The other perpetrator threw the gas hose on the ground and got in the truck without putting the gas cap on the tank. They drove out of the gas station at a high rate of speed, almost hitting a pickup truck.
A bystander observed the robbers leave the gas station and followed them. The robbers traveled up and down several streets. The bystander stopped at another convenience store and called the police. While he was talking on the phone, one of the robbers came into the store and asked directions to the interstate highway going toward Pensacola.[1] The bystander gave *1051 the police the license tag number. Sheriff deputies from Santa Rosa County began to follow the suspects in the westbound lane of I-10. When the deputies turned on their blue light, the suspects fled at a high rate of speed. During the chase, the vehicles were going as fast as 100 to 110 m.p.h. The deputies chased the suspects into Escambia County. During the chase, the suspects swerved at least twice in an attempt to run two of the Santa Rosa County deputies off the road. A one-car roadblock was set up in Escambia County by Deputy Sheriff Don Cook. Deputy Matroni of the Santa Rosa County Sheriff's Office saw the roadblock and attempted to cut off the suspects' avenue of escape by driving into the median. Deputy Matroni's vehicle struck Deputy Cook, who had left his vehicle and walked onto the median. Deputy Cook was killed by the impact from Deputy Matroni's vehicle. The chase continued on the interstate, and ultimately ended when the robbers collided with a police vehicle. The driver, appellant's brother, stuck his left arm out and tossed an automatic pistol onto the roof of the car. The appellant, who was the passenger, attempted to flee. He had a revolver in his right hand as he ran away. He turned and attempted to fire at a deputy sheriff. The deputy fired his weapon three times, hitting the appellant. When apprehended, appellant was in possession of 30 rounds of ammunition as well as the revolver. The entire incident from robbery to apprehension took no more than an hour.
The appellant and his brother, Johnny Walter Parker, were tried on one count of armed robbery, one count of kidnapping, two counts of aggravated assault, and one count of second degree felony murder as a result of the death of Deputy Don Cook. The underlying felony which supported the second degree murder and kidnapping charge was the robbery of Ralph Stewart. The trial court granted a motion in limine filed by the state which prohibited the defense from introducing evidence, commenting on or arguing the negligence, if any, of Officer Larry Matroni, and the contributory negligence of Deputy Don Cook in the manner in which he set up the roadblock. The counts of aggravated assault against the appellant were dismissed. The appellant was found guilty of all other charges.

I. Whether the trial court erred in denying appellant's motion 
for judgment of acquittal on the second degree felony murder 
charge.
The appellant argues that the robbery of Ralph Stewart was completed prior to the time of the death of Deputy Don Cook and, thus, the robbery could not be utilized to support his conviction for second degree felony murder. The second degree felony murder statute in pertinent part reads: "When a person is killed in the perpetration of ... [any] robbery ... by a person other than the person engaged in the perpetration of ... such felony, the person perpetrating ... such felony is guilty of murder in the second degree." § 782.04(3), F.S. (1989) (emphasis added).
The term "in the perpetration of" includes the period of time when a robber is attempting to escape from the scene of the crime. Hornbeck v. State, 77 So.2d 876 (Fla. 1955). In determining when flight has terminated, it is useful to consider the purpose of the felony murder statute. That purpose is to protect the public from inherently dangerous situations caused by the commission of the felony. State v. Hacker, 510 So.2d 304, 306 (Fla. 4th DCA 1986). Therefore, "[i]n the absence of some definitive break in the chain of circumstances beginning with the felony and ending with the killing, the felony, although technically complete, is said to continue to the time of the killing." Mills v. State, 407 So.2d 218, 221 (Fla. 3rd DCA 1981).
Factors to be considered in determining whether there has been a break in the chain of circumstances include the relationship between the underlying felony and the homicide in point of time, place and causal relationship. One commentator suggests that in the case of flight, a most important consideration is whether the fleeing felon has reached a "place of temporary safety." LaFave, Substantive Criminal Law, § 7.5 (1986).
*1052 In the instant case, the application of these factors demonstrates that the robbery was not completed at the time of the death of Deputy Sheriff Cook. The time from the robbery to the killing was no longer than an hour, the killing occurred no more than several miles from the robbery, and the only stops that the robbers made were to get gas and ask directions  all to accomplish their goal of fleeing from the scene of the crime to a place of safety, their motel room.
Further, it is apparent that there is a clear causal relationship between the robbery and the death of Deputy Sheriff Cook. The death was a result of the high-speed chase necessitated by the robbers' attempt to flee the scene of the crime. This was sufficient evidence to support the conviction of second degree felony murder. State v. Hacker, supra.

II. Whether the trial court erred in excluding proffered evidence 
of police negligence as an intervening cause of Deputy Cook's 
death.
The appellant asserts that the trial court erred in not permitting him to introduce evidence that the negligence of the police in conducting the chase and setting up the road block was an intervening cause which would constitute a break in circumstances and a defense to second degree felony murder.
The trial court is not required to admit evidence unless it is relevant to a legally recognizable defense. Chestnut v. State, 538 So.2d 820 (Fla. 1989). The alleged negligence of the police did not constitute a legally recognizable defense to second degree felony murder.
Second degree felony murder contemplates that the death will result from the actions of a person who is not involved in the commission of the felony. State v. Dene, 533 So.2d 265 (Fla. 1988). Dene says, "[A]ll principals ... are culpable for any killings which are committed during the felony by innocent bystanders, police officers, victims, or other persons not committing the felony." Id. at 269. If a defendant was permitted to rely on the negligent conduct of the victim and third parties as intervening acts, it would defeat the obvious purpose of the statute as expressed in Dene, which is to hold felons accountable for unintended deaths caused by their dangerous conduct.
Where there is a clear causal relationship between the felony and the death or the inherently dangerous circumstances created by the felony, negligent acts of innocent parties will not act as a defense to second degree felony murder. The nexus between the robbery and death in the instant case is clear: the robbery created the circumstance which led to the high-speed chase which caused Deputy Cook's death.

III. Whether there was sufficient evidence to support a 
conviction for kidnapping.
The appellant contends that the crime of kidnapping was never completed because the perpetrators were unsuccessful in their attempts to contain Mr. Stewart in the trunk of his vehicle.
The supreme court adopted a three-prong test in Faison v. State, 426 So.2d 963 (Fla. 1983), to determine whether the confinement or movement of victims during a crime is sufficient to support a kidnapping charge. The court said for a kidnapping conviction to stand, the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
Id. at 965 (quoting State v. Buggs, 219 Kan. 203, 216, 547 P.2d 720, 731 (1976)).
The court further explained the application of this test in upholding a kidnapping conviction in Ferguson v. State, 533 So.2d 763 (Fla. 1988), where a robber forced employees of a restaurant into an unlocked bathroom behind the store for less than a minute:

*1053 Moreover, the determination of whether the confinement makes the other crime substantially easier of commission or substantially lessens the risk of detection does not depend upon the accomplishment of its purpose. The question is whether the initial confinement was intended to further either of these objectives.
Id. at 764 (emphasis added).
The appellant essentially challenges the first prong of the Faison test. We find that forcing the defendant to move into a closed but unlocked trunk at gunpoint was sufficient to meet the test of not "slight, inconsequential or merely incidental to the robbery" as that test was explained in Ferguson. For that reason, the kidnapping conviction is upheld.

IV. Whether the trial court erred in imposing a three-year mandatory minimum sentence for possession of a firearm during the commission of the robbery.[2]
The appellant asserts that there is no evidence that he was in actual physical possession of a firearm during the commission of the robbery. This argument is without merit.
While there is strong circumstantial evidence that the defendant possessed the firearm at the actual scene of the crime,[3] it is unnecessary for this court to address whether that evidence was sufficient to support imposition of the mandatory minimum.
Section 812.13(3)(a), Florida Statutes, states:
An act shall be deemed `in the course of committing a robbery' if it occurs in an attempt to commit robbery or in flight after the attempt or commission.
§ 812.13(3)(a), F.S. (1989) (emphasis added).
In light of this statutory provision and the previous discussion concerning whether the flight in the instant case constitutes part of the commission of the robbery, we hold that the defendant's possession of a firearm during flight from the robbery is sufficient to support imposition of the three-year mandatory minimum sentence.

V. Whether the split sentence imposed on the appellant violates 
the constitutional prohibition against double jeopardy.
The appellant was sentenced to concurrent prison terms of 15 years followed by a 10-year period of probation. The appellant asserts that imposition of the probationary split sentence violates double jeopardy. Pursuant to the authority of Poore v. State, 531 So.2d 161 (Fla. 1988), and Glass v. State, 556 So.2d 465 (Fla. 1st DCA 1990), we find no error in the imposition of the split sentence.
We affirm as to all issues.
WENTWORTH and MINER, JJ., concur.
NOTES
[1] Evidence later revealed the robbers were from South Carolina and were staying in a motel in Pensacola.
[2] There appears to be some confusion as to whether the trial judge orally imposed multiple mandatory minimum sentences, but the written judgment and sentence only reflect a mandatory minimum sentence imposed as to the robbery. Since neither side has challenged the written sentence on appeal, we will only address the sentence for robbery.
[3] Victim felt object jabbed into his back, and when appellant was captured, he had the pistol and ammunition on his person.