737 So.2d 1149 (1999)
Cedric Maurice LESTER, Appellant,
v.
STATE of Florida, Appellee.
No. 97-00478.
District Court of Appeal of Florida, Second District.
June 25, 1999.
*1150 James Marion Moorman, Public Defender, and Cynthia J. Dodge, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
PATTERSON, Acting Chief Judge.
Cedric Lester appeals from his judgment and sentence for grand theft, third-degree murder, and leaving the scene of an accident. We reverse his judgment and sentence for third-degree murder and remand for the trial court to adjudicate and sentence Lester for vehicular homicide; we affirm his convictions for grand theft and leaving the scene of an accident.
At Lester's jury trial, Paul Kincaid testified that on the morning of November 17, 1994, he was in a stolen Dodge Shadow which Lester was driving. Kincaid assumed that Lester knew the car was stolen because it had no ignition and they started it with a screwdriver. Kincaid saw the car for the first time the night before and Lester was not driving it. Kincaid did not know who stole the car, but he testified that Lester did not steal it.
While Lester and Kincaid (who were both juveniles) were driving around Tampa about 10:00 a.m., they saw a police car pass them when they were at a stoplight. The police car pulled into a car lot and turned around. Lester took off even though the light was still red. They did not see the police car again. Lester ran three stop signs before he collided with another car. Kincaid estimated that they were traveling about 60 m.p.h. just before impact. After the crash, the boys got out of the car and ran down the street. Two bystanders ran after them and brought them back to the scene.
The car Lester hit flipped over and hit a tree, and the car sustained major damage to the driver's side. Erma Martin had been sitting in the back seat behind the *1151 driver. Gail Albury, who had been sitting to the right of Martin, testified that Martin fell on her at the time of the crash and that "purple stuff" came out of Martin's mouth. Martin was not treated at the scene, but later she went to the hospital. Hospital records indicated that Martin complained of lower left quadrant pain, but she left before being treated and signed a release stating that she was leaving against medical advice. Sometime early the next morning, Martin died at home.
Dr. Pfalzgraf, an associate medical examiner who performed the autopsy, testified that the cause of Ms. Martin's death was laceration of the spleen due to a blunt impact to the torso. She had bruises and her abdominal cavity contained about two-and-a-half quarts of blood, representing a blood loss of about half of Martin's total blood volume. Although Martin had cirrhosis of the liver and a presumptive test was positive for the presence of barbiturates in her system, Dr. Pfalzgraf ruled out these factors as contributing to the cause of death. He found the injuries were not inconsistent with a person who is in the back seat behind the driver, although the bruising was on the right side and the spleen is on the left. He explained that Martin's body could have hit the body of another passenger sitting to her right after the left side of the car had been struck. He also testified that Martin's ruptured spleen and other injuries were inconsistent with a fall.
Dr. Montgomery, the defense's expert in toxicology, testified about the effect of barbiturates on a person's system. On cross-examination, however, he admitted that the amount of barbiturates in a person's system would not matter if the person had lost half of his or her body's blood volume into the abdominal cavity because that blood loss would probably be fatal.
A police officer testified that the cause of the accident was that the Dodge Shadow, the car Lester drove, had run the stop sign. The Dodge had been reported stolen the previous evening. After Miranda[1] warnings, Lester told an officer at the hospital that he knew the car was stolen, that he ran a stop sign, and that he was driving the way he was because he had spotted a police officer and was trying to get out of the area.
The trial court denied Lester's motions for judgment of acquittal at the close of the State's case and at the close of all the evidence. The jury found Lester guilty of grand theft, third-degree murder, vehicular homicide, and leaving the scene of an accident. The trial court sentenced Lester as a youthful offender to five years for grand theft and to six years for third-degree murder, to be suspended after four years with two years of community control to follow. The court also sentenced Lester to sixty days for leaving the scene of an accident. All of the sentences were to run concurrently. Lester was not sentenced for vehicular manslaughter, nor was the offense scored on the guidelines.
First, the trial court erred in denying Lester's motion for judgment of acquittal on the third-degree murder charge because the State failed to prove a sufficient causal connection between the grand theft of the car and the accident. To support a felony murder conviction, the State must establish "that the homicide was committed in the perpetration of the felony." Allen v. State, 690 So.2d 1332, 1334 (Fla. 2d DCA 1997). The Allen court held that there was a break in the chain of circumstances when someone stole a car in the early morning hours and, later that evening, Allen was involved in an accident while driving the stolen car. Similarly, the car Lester was driving on the morning of the accident had been stolen the previous evening.
Although this case involves the added factor of Lester driving recklessly because he believed the police were following him, his reckless driving was too attenuated from the grand theft of the car the previous evening to support a felony murder conviction. The cases that the State relies upon involve flight from the scene of the *1152 crime immediately after its commission. See Parker v. State, 570 So.2d 1048 (Fla. 1st DCA 1990) (affirming felony murder conviction when collision occurred within one hour of robbery and police were in high-speed pursuit of defendant); State v. Hacker, 510 So.2d 304 (Fla. 4th DCA 1986) (reversing dismissal of felony murder charge when five minutes after robberies fatal accident occurred while defendant was fleeing from a witness to the robbery who took up chase); see also Campbell v. State, 227 So.2d 873 (Fla.1969) (affirming the giving of felony-murder instruction when defendant shot and killed an officer an hour after robbery while trying to evade apprehension).
Here, the collision did not occur until the following day, and Lester was not fleeing "the scene of the crime." He was driving recklessly because he spotted a police car. The State did not prove that the grand theft and the homicide bore a sufficient connection "in point of time, place, or causal relationship" to support Lester's conviction for third-degree murder. Allen, 690 So.2d at 1334. Thus, we vacate the judgment and sentence for third-degree murder and direct the trial court to adjudicate and sentence Lester for vehicular homicide, the offense of the lesser degree for which the jury also found him guilty.
Lester also contends that the evidence did not support the vehicular homicide charge. Contrary to Lester's assertion, the State presented competent, substantial evidence that Lester's reckless driving caused Martin's death. Dr. Pfalzgraf testified that Martin died from a ruptured spleen caused by blunt impact to the torso and that the injury was inconsistent with a fall. He also testified that her injuries were not inconsistent with being in the back seat behind the driver during an auto accident. Furthermore, there was no evidence that Martin had suffered a fall that could cause her spleen to rupture.
Martin's failure to get treatment does not exonerate Lester from his reckless behavior of speeding and running a stoplight and stop signs. See Tunsil v. State, 338 So.2d 874 (Fla. 3d DCA 1976) (holding that lack of affirmative medical treatment was not an intervening cause which would relieve defendant of criminal responsibility for death). It was reasonably foreseeable that Lester's conduct would result in a collision and death. Thus, a conviction for vehicular homicide is proper.
We note that the written sentence for the misdemeanor of leaving the scene of an accident reflects a sentence of sixty days to be followed by two years of community control. On remand, the trial court must strike the community control portion from the sentence because it does not comport with the trial court's pronouncement, and it is an illegal sentence because it exceeds the statutory maximum. We note that this court may review the unpreserved error because an illegal sentence constitutes fundamental error. See Bain v. State, 24 Fla. L. Weekly D314, 730 So.2d 296 (Fla. 2d DCA 1999) (en banc). We also direct the trial court at resentencing to make a new determination of the appropriate credit for time served.
Affirmed in part, reversed in part, and remanded.
ALTENBERND and CASANUEVA, JJ., Concur.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).