816 So.2d 697 (2002)
Darwin K. KLINGER, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 2D00-4988.
District Court of Appeal of Florida, Second District.
April 12, 2002.
Rehearing Denied May 24, 2002.
*698 Richard G. Bartmon of Bartmon & Bartmon, P.A., Boca Raton, for Appellant/Cross-Appellee.
Robert A. Butterworth, Attorney General, Tallahassee, and Ha T. Dao, Assistant Attorney General, Tampa, for Appellee/Cross-Appellant.
STRINGER, Judge.
Darwin Klinger challenges his convictions for DUI manslaughter and tampering with evidence. Although Klinger raises several issues on appeal, we find that only one warrants discussion. We affirm Klinger's convictions for DUI manslaughter and tampering with evidence and write to address his assertion that the victim's refusal to accept a blood transfusion was an intervening cause of death. Our affirmance renders the State's cross-appeal concerning jury instructions moot.
At Klinger's trial, Karen Branco testified that, on February 20, 1999, she and her son, Thomas Branco, were driving on State Road 60 in Bartow, when the transmission in Mr. Branco's vehicle malfunctioned. Mr. Branco got out to push the car. Shortly thereafter, Klinger collided with the vehicle causing severe injuries to Mr. Branco. Testimony revealed that Klinger's blood alcohol level at the time of the accident was between .10 and .18.
Mr. Branco remained conscious and alert while being taken to the hospital. Dr. Rhonda Fischel testified that Mr. Branco suffered life-threatening injuries, and without treatment, his chances of survival were "very low." Mr. Branco informed Dr. Fischel that he was a Jehovah's Witness and did not want a blood transfusion under any circumstances. Dr. Fischel opined that Mr. Branco's chance of survival, had he accepted a blood transfusion, was between eighty-five and ninety percent. Mr. Branco did not receive a transfusion and died due to loss of blood.
In order to convict on a charge of DUI manslaughter, the State must show that a defendant was under the influence or had an unlawful blood alcohol level while operating a vehicle and, by reason of such operation, caused the death of another human being. § 316.193(3)(c)(3), Fla. Stat. (1999); see also State v. Hubbard, 751 So.2d 552, 563 (Fla.1999) ("[T]he fact that someone is intoxicated and drives a particular vehicle which causes another person's death should be enough to satisfy the elements of DUI manslaughter."). Klinger argues that he did not "cause" Mr. Branco's death because Mr. Branco would not have died if he had accepted the recommended medical treatment. However, Florida courts have consistently rejected this argument.
In Johnson v. State, 64 Fla. 321, 59 So. 894 (1912), the supreme court adopted the principle that:
A defendant cannot escape the penalties for an act which in point of fact produces death, which death might possibly have been averted by some possible mode of treatment. The true doctrine is that, where the ... [wound] is in itself dangerous to life, mere erroneous treatment of it or of the wounded man suffering from it will afford the defendant no protection *699 against the charge of unlawful homicide.
Id. at 895 (quoting Daughdrill v. State, 113 Ala. 7, 21 So. 378, 387 (1897)).
Applying this principle in Lester v. State, 737 So.2d 1149, 1150 (Fla. 2d DCA 1999), this court considered the criminal liability of a defendant where the victim failed to obtain proper medical treatment. In Lester, a juvenile, while driving a stolen car and attempting to flee the police, collided with the victim's vehicle. The victim went to the hospital, complaining of pain, but left before being treated and died sometime early the next morning from internal injuries caused by the accident. Id. at 1151. Lester argued that he was not criminally responsible because the victim's failure to obtain medical treatment was an intervening cause of death. However, we held that the victim's failure to obtain medical treatment was not an intervening cause that exonerated Lester from criminal responsibility because "[i]t was reasonably foreseeable that Lester's conduct would result in a collision and death." Id. at 1152.
Although not controlling, we note that the Supreme Court of Indiana has considered the issue of criminal liability where the victim refuses to accept a blood transfusion for religious reasons. See Ford v. State, 521 N.E.2d 1309 (Ind.1988). In Ford, the victim of a robbery died due to blood loss from a gunshot wound inflicted by the defendant. The Indiana Supreme Court rejected Ford's claim that because the victim, a Jehovah's Witness, refused a blood transfusion, his refusal should act as an intervening cause absolving Ford from criminal liability. The Ford court held that "[o]ne who inflicts an injury on another is deemed by the law to be guilty of homicide if the injury contributes ... immediately to the death of the victim. The fact that other causes contribute to the death does not relieve the actor from responsibility." Id. at 1310.
Similarly, in the present case Klinger's actions caused life-threatening injuries to Mr. Branco. The fact that Mr. Branco refused a blood transfusion which might have saved his life does not absolve Klinger from criminal liability. Accordingly, we affirm Klinger's convictions for DUI manslaughter and tampering with evidence.
Affirmed.
BLUE, C.J., and SALCINES, J., concur.