874 So.2d 617 (2004)
Jonathan SANTIAGO, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-2659.
District Court of Appeal of Florida, Fifth District.
March 26, 2004.
Rehearing Denied June 15, 2004.
*619 Francis V. Iennaco of LeBlanc & Iennaco, Orlando, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, C.J.
Jonathan Santiago appeals his conviction for the offense of third-degree murder. Santiago contends that the trial court erred in denying his motion for a new trial because the evidence was insufficient to support a conviction for that offense. We will first discuss the factual background of the instant case, explain why the evidence presented was insufficient to prove the crime of third-degree murder, and determine whether a new trial is the appropriate relief for Santiago.

Factual Background
The trial began with the State setting the background of the murder of the victim, Paul Johnson, a heroin user who used stolen property to purchase his drugs from a man named Johnny Polanco. The night of the murder, Paul's girlfriend was spending the evening with Paul. The girlfriend testified that a knock on the door prompted Paul to ask who was there, look through the peep hole, and eventually open the door and step out. After conversing with a person or persons for several minutes, Paul reentered the apartment, retrieved a cordless phone and went back out the door. Within a second or two, the girlfriend heard a gunshot and heard Paul exclaim that he had been shot.
Unfortunately, because the girlfriend did not know who shot Paul, the State presented as its key witness Polanco, who had been given immunity in exchange for his testimony. The truth according to Polanco was that on the night of the murder, he, Santiago, and two other men discussed the possibility of robbing Paul.[1] After providing them with two guns, Polanco escorted *620 the three men to the apartment complex where Paul lived. Because he was scared, Polanco lagged behind as his minions made their way to Paul's apartment. Polanco heard a shot and ran back to the car where the others joined him.
Polanco further testified that once he and the others were reunited in the car, one of the men exclaimed that Santiago had shot Paul, whereupon Santiago told him to "shut up." The guns were discarded in a lake, and one of them was subsequently recovered where Polanco told the police to look. Polanco also testified that after he agreed to cooperate, the police wired him and sent him to confront Santiago. This attempt at obtaining evidence of Santiago's guilt was unsuccessful, however, because Santiago denied shooting Paul.
Santiago's testimony at trial differed from Polanco's. According to Santiago, he was at Polanco's apartment the night of the shooting, but he denied that he and the others planned to commit a robbery. Instead, he testified, their purpose in driving to the apartment complex where Paul lived was to buy marijuana from someone Polanco knew who lived there. That someone, however, was not Paul. While he was at the complex, Polanco decided to check on a customer who owed him money. That customer turned out to be Paul. Santiago also explained that he did not know Paul. All four men went to Paul's apartment, but Paul would not let them inside. Polanco was talking to Paul at the doorway when Santiago heard a gunshot. The men then ran to the car.
Santiago was arrested and charged with first-degree murder and attempted robbery with a firearm. The jury returned its verdict finding Santiago not guilty of those offenses and not guilty of the following lesser included offenses: second-degree murder with a firearm; second-degree murder; manslaughter with a firearm; manslaughter; and third-degree murder with a firearm. However, the jury did find Santiago guilty of third-degree felony murder, but specifically found that he did not actually possess a firearm during the commission of the crime. We will determine whether the conviction for third-degree murder should be reversed based on insufficiency of the evidence, as Santiago argues in his motion for a new trial.

The Evidence Was Insufficient To Prove Third-Degree Murder
Third-degree murder is "[t]he unlawful killing of a human being, when perpetrated without any design to effect death, by a person engaged in the perpetration of, or in the attempt to perpetrate, any felony other than any" enumerated felony in section 782.04(4)(a)-(r), Florida Statutes. § 782.04(4), Fla. Stat. (2002); Tillman v. State, 842 So.2d 922, 926 (Fla. 2d DCA 2003) ("Third-degree murder is an unlawful killing that occurs during the perpetration of, or the attempt to perpetrate, a felony other than those felonies listed in section 782.04(4), Florida Statutes (1997)."); State v. Williams, 776 So.2d 1066 (Fla. 4th DCA 2001); Sims v. State, 712 So.2d 786, 786 (Fla. 2d DCA 1998) ("Third-degree murder is the unpremeditated, unlawful killing of another by a person engaged in the commission of a felony other than certain specifically enumerated felonies."). Section 782.04 is referred to as the felony murder statute, see Williams, and third-degree murder under the statute is often referred to as third-degree felony murder. See Pope v. State, 679 So.2d 710, 715 n. 6 (Fla.1996), cert. denied, 519 U.S. 1123, 117 S.Ct. 975, 136 L.Ed.2d 858 (1997); Baker v. State, 793 So.2d 69 (Fla. 4th DCA 2001); Williams.
The primary purpose of the felony murder statute is to protect the public from the dangers associated with the commission of felony offenses. Parker v. *621 State, 641 So.2d 369 (Fla.1994), cert. denied, 513 U.S. 1131, 115 S.Ct. 944, 130 L.Ed.2d 888 (1995). This purpose is accomplished by imposing appropriate punishment on those who commit felony offenses that cause the death of another, thus deterring the commission of serious crimes in the future. We note, parenthetically, the suggestion that has been made that placing too much emphasis on the deterrent aspect may present an overly generous view of the ability or willingness of felons to actually engage in deliberative thought, to any meaningful degree, regarding the consequences of their actions. Williams. The punitive aspect of the statute is found in the provision that a person may be held responsible for the death of another even though he did not form the intent to kill if he was "engaged in the perpetration of ... any felony...." § 782.04(4), Fla. Stat. (2002).
The courts have interpreted this statutory provision in light of the purpose of the felony murder statute to protect society by imposing just punishment and, perhaps to some degree, deter future crime by requiring that there be a causal connection between the felony that was committed and the killing of the victim. House v. State, 831 So.2d 1230 (Fla. 2d DCA 2002); Allen v. State, 690 So.2d 1332, 1334 (Fla. 2d DCA 1997). As the court explained in Allen, "In any felony murder conviction the element of causation, i.e., that the homicide was committed in the perpetration of the felony, must be established." 690 So.2d at 1334 (citing Mahaun v. State, 377 So.2d 1158 (Fla.1979)).[2] "Stated another way, the State must prove that there was no break in the chain of circumstances beginning with the felony and ending with the murder." House, 831 So.2d at 1232 (citing Parker). If there is a break in the chain of events between the felony and the killing, the felony murder rule does not apply. See House; Lester v. State, 737 So.2d 1149, 1151 (Fla. 2d DCA 1999); Allen.
Santiago contends that the verdict rendered by the jury clearly shows that the jury rejected Polanco's testimony and accepted Santiago's testimony that the men were buying cannabis from a third party. Santiago argues that he could not be guilty of third-degree murder because the State failed to present sufficient evidence to establish a causal connection between the intent to purchase cannabis and the shooting of Paul. The State contends that Polanco's testimony that he was a cannabis customer of Paul supplied the nexus between the attempt to purchase the cannabis and the murder.
We believe that the State has taken an inaccurate view of the testimony. Polanco's original story to the police, or one of the original stories, was that he went to Paul's apartment with the other men to buy cannabis from Paul. But Polanco admitted that this was a lie after he made his deal for immunity with the police and after he became aware of the self-serving importance to tell the truth. Moreover, the jury specifically found that Santiago had not carried a firearm during the crime and also found him not guilty of the robbery *622 charge. Santiago argues that this left the jury with his testimony, which failed to establish a causal connection between the intent to purchase cannabis from an unnamed third party and Paul's murder.
The record clearly shows that the State failed to present any evidence of an actual drug purchase or of an attempted drug purchase. At most, the State presented evidence of an intent to purchase cannabis, but there must be more. In addition to the specific intent to commit a crime, the State must also show that the defendant committed some actual overt act toward actually committing the crime that was more than mere preparation. State v. Duke, 709 So.2d 580 (Fla. 5th DCA 1998); Morehead v. State, 556 So.2d 523 (Fla. 5th DCA 1990). "The overt act must reach far enough toward accomplishing the desired result to amount to commencement of the consummation of the crime." Morehead, 556 So.2d at 525 (footnote omitted) (citing State v. Coker, 452 So.2d 1135 (Fla. 2d DCA 1984)).
In Duke, for example, the defendant met a person who he thought was a twelve-year-old girl in a chat room on the Internet when, in reality, the defendant was communicating with a law enforcement officer. The officer eventually set up a meeting with the defendant so they could get together and engage in sex. As arranged, the defendant drove to the designated spot and flashed his lights as a signal to the girl. Upon flashing his lights, the defendant was arrested and charged with attempted sexual battery. This court held that the defendant's conduct, the planning of the act and proceeding to the designated location, was not sufficient to reach the level of an overt act leading to the commission of sexual battery. Therefore, this court reversed the defendant's conviction.
Santiago argues that in the instant case, his acts did not extend as far as those in Duke because, although he went to the apartment complex where he intended to buy drugs, he did not arrive at the exact apartment where the purchase was to occur. We agree and conclude that Santiago's conviction must be reversed. Now we must proceed to determine the appropriate remedy. Santiago's motion requests a new trial with directions that a judgment of acquittal subsequently be entered on the ground that the evidence was insufficient to prove the crime for which he was convicted. Although we agree with Santiago that the evidence was insufficient to support a conviction for third-degree murder, we must determine whether that is a proper ground for a motion for new trial in light of our concern that a retrial may violate double jeopardy principles.

Insufficiency Of The Evidence Is Not A Proper Ground For A Motion For New Trial
Historically, the courts of this state held that a motion for new trial was a necessary prerequisite to review on appeal the sufficiency of the evidence to support a conviction. See State v. Owens, 233 So.2d 389 (Fla.1970) (holding that a motion for new trial based on alleged insufficiency of the evidence must be filed as a prerequisite to review of the sufficiency of evidence on appeal in criminal cases); see also State v. Wright, 224 So.2d 300 (Fla.1969). Essentially these cases recognized that this issue was typically brought to the trial court's attention via a motion for directed verdict. In order to preserve that issue for appellate review, these cases held that it must be raised in a motion for new trial. In Mancini v. State, 273 So.2d 371, 373 (Fla.1973), the court receded in part from Owens and Wright when it held that the issue need not be raised in a motion for new trial if it was first raised in a motion for directed verdict in the trial proceedings. *623 Hence, it was no longer necessary to preserve the issue of the sufficiency of the evidence via motion for new trial as long as it was properly raised in a motion for directed verdict. Subsequently, in Nogar v. State, 277 So.2d 257 (Fla.1973), the court further explained that the issue could be raised in either a motion for directed verdict or motion for new trial. Based on this historical view, Florida courts have held that when the issue on a motion for new trial is sufficiency of the evidence, a trial judge abuses his or her discretion in granting a new trial if the state presented sufficient evidence to support the conviction. See State v. Coles, 91 So.2d 200 (Fla.1956); State v. McMahon, 485 So.2d 884 (Fla. 2d DCA), review denied, 492 So.2d 1333 (Fla. 1986); Gonzalez v. State, 449 So.2d 882 (Fla. 3d DCA), pet. for review denied, 458 So.2d 274 (Fla.1984); State v. Haliburton, 385 So.2d 11 (Fla. 4th DCA 1980).
Decisions of more recent vintage indicate that an appropriate ground for a motion for a new trial in a criminal case is the sufficiency of the evidence.[3] Some of these decisions seem to rely on the historical role that a motion for new trial played in preserving the issue of the sufficiency of the evidence for appellate review. Other decisions rely on Florida Rule of Criminal Procedure 3.600(a)(2), which provides that a new trial may be granted if "[t]he verdict is contrary to law or the weight of the evidence." For example, in Thomas v. State, 574 So.2d 160 (Fla. 4th DCA 1990), the court indicated that the provision in the rule that a new trial may be granted if the "verdict is contrary to law" means that the insufficiency of the evidence is a proper basis for that relief.
This court and others have recognized clear distinctions between the "sufficiency of the evidence" and the "weight of the evidence" standards. Tibbs v. State, 397 So.2d 1120 (Fla.1981), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); McArthur v. Nourse, 369 So.2d 578 (Fla.1979); State v. Brockman, 827 So.2d 299 (Fla. 1st DCA 2002); Geibel v. State, 817 So.2d 1042 (Fla. 2d DCA 2002); Moore v. State, 800 So.2d 747 (Fla. 5th DCA 2001); see also Guebara v. State, 856 So.2d 1087 (Fla. 5th DCA 2003). The "sufficiency of the evidence" standard determines whether the evidence presented is legally adequate to permit a verdict and is typically utilized to decide a motion for directed verdict. "In the criminal law, a finding that the evidence is legally insufficient means that the prosecution has failed to prove the defendant's guilt beyond a *624 reasonable doubt." Tibbs, 397 So.2d at 1123. Sufficiency of the evidence is generally an issue of law that should be decided pursuant to the de novo standard of review. See Jones v. State, 790 So.2d 1194 (Fla. 1st DCA 2001); State v. Hawkins, 790 So.2d 492 (Fla. 5th DCA 2001). The "weight of the evidence" standard determines whether a greater amount of credible evidence supports one side of an issue or the other. State v. Hart, 632 So.2d 134, 135 (Fla. 4th DCA 1994).[4] The standard of review that applies to this issue is abuse of discretion. See Stephens v. State, 787 So.2d 747, 754 (Fla.) ("A trial court's denial of a motion for a new trial is reviewed under an abuse of discretion standard."), cert. denied, 534 U.S. 1025, 122 S.Ct. 556, 151 L.Ed.2d 431 (2001).
Prior to the United States Supreme Court's decision in Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), insufficiency of the evidence may have been a proper ground for a motion for new trial in a criminal case and this may have been a logical interpretation of rule 3.600(a)(2). However, in Burks, the Court held that if it is determined either by the trial court or appellate court that the evidence is insufficient to sustain a conviction, the proper remedy is acquittal and not a new trial. The Florida courts have applied Burks to grant acquittals in cases where a finding was made that the evidence was insufficient to support a conviction.[5] Indeed, in Tibbs, the Florida Supreme Court noted the distinction between the "sufficiency of the evidence" and the "weight of the evidence" standards in the criminal rules of procedure:
At the trial level, the weight-sufficiency distinction is apparent in our Rules of *625 Criminal Procedure. We noted in McArthur v. Nourse, 369 So.2d 578 (Fla. 1979) that:
[a] critical distinction has existed at least since 1967, when rules 3.380 (formerly 3.660) and 3.600 of the Florida Rules of Criminal Procedure were adopted. Rule 3.380(a) provides that a motion for judgment of acquittal should be granted if, at the close of the evidence, "the court is of the opinion that the evidence is insufficient to warrant a conviction." In contrast, rule 3.600(a)(2) provides that a motion for new trial shall be granted if the jury verdict is "contrary to law or the weight of the evidence."

Id. at 580 (footnote omitted) (emphases added). Rule 3.600(a)(2) thus enables the trial judge to weigh the evidence and determine the credibility of witnesses so as to act, in effect, as an additional juror. It follows that a finding by the trial judge that the verdict is against the weight of the evidence is not a finding that the evidence is legally insufficient.
397 So.2d at 1123 n. 9 (citation omitted).
In light of the clear distinctions between the "sufficiency of the evidence" and the "weight of the evidence" standards, and based on the decision in Burks and the decisions of the Florida courts that have properly applied the holding of that case, we conclude that "sufficiency of the evidence" is not a proper ground for a motion for new trial in a criminal case. The issue of the sufficiency of the evidence should be raised in the context of a motion for a directed verdict, not a motion for new trial. In order to obtain effective appellate review of orders granting or denying motions for new trial and for directed verdict, litigants should be careful in framing the issues presented to this court for resolution and be especially careful to request the relief to which they are actually entitled.
Here, Santiago has raised the issue that the trial court erred in denying his motion for a new trial based on the insufficiency of the evidence. In essence, Santiago is asking for a new trial, which is an inappropriate remedy given our conclusion that the evidence is indeed insufficient to sustain Santiago's conviction in the instant case. We note, however, that even though Santiago raised the wrong issue, he did appeal his judgment and sentence and the State did argue the sufficiency of the evidence in its brief without raising any argument regarding Santiago's request for an inappropriate remedy. Based on the record before us, we believe that the State has had a fair and adequate opportunity to argue the sufficiency of the evidence in these proceedings. Hence, we revert to the tried and true rules of appellate procedure, which allow us in situations like this to grant the relief that is just and proper. See Fla. R.App. P. 9.040(c) ("If a party seeks an improper remedy, the cause shall be treated as if the proper remedy had been sought...."); Fla. R.App. P. 9.140(i) ("In the interest of justice, the court may grant any relief to which any party is entitled.").

Conclusion
We conclude that the evidence is insufficient to support Santiago's conviction. Therefore, Santiago is entitled to discharge, and we grant him that relief. Accordingly, Santiago's conviction and sentence are reversed, and this matter is remanded to the trial court with instructions to discharge Santiago.
REVERSED and REMANDED with instructions.
PALMER and TORPY, JJ., concur.
NOTES
[1] Polanco admitted that he had told several stories to the police, one of which was that he and his associates were going to Paul's house to purchase marijuana. But once Polanco made his deal with the State for immunity, he had to be honest so he admitted on the stand that this particular story was not the truth.
[2] In Mahaun, the court explained third-degree felony murder as follows:

Third-degree murder, as set forth in section 782.04(4), Florida Statutes (1977), is defined as an unlawful killing committed by a person engaged in the perpetration of any felony other than those identified as the underlying felony in second-degree murder when there is no premeditated design to effect the death of the victim. There is no alternative means to find a person guilty of third-degree murder other than by establishing that there was an appropriate underlying felony and that a homicide occurred in its perpetration.
377 So.2d at 1160.
[3] See State v. Andrews, 820 So.2d 1016, 1021 (Fla. 4th DCA 2002) ("In reviewing a motion for a new trial, the trial court must consider both the weight and sufficiency of the evidence.' ") (quoting State v. Hart, 632 So.2d 134 (Fla. 4th DCA 1994)); State v. May, 703 So.2d 1097, 1098 (Fla. 2d DCA 1997) ("A new trial motion is made pursuant to rule 3.600 and may be based on two grounds: (i) the legal sufficiency of the evidence or (ii) the weight of the evidence. Fla. R.Crim. P. 3.600(a)(2)."); Thomas v. State, 574 So.2d 160, 160 (Fla. 4th DCA 1990) ("Accordingly, we relinquish jurisdiction to the trial court for a period of forty five (45) days with instructions to reconsider the motion for new trial on the basis of both the weight and sufficiency of the evidence.") (citing Uprevert v. State, 507 So.2d 162 (Fla. 3d DCA 1987); Jordan v. State, 470 So.2d 801 (Fla. 4th DCA 1985)). In Hart, for example, the court stated:

In reviewing a motion for a new trial, the trial court must consider both the weight and sufficiency of evidence. Thomas v. State, 574 So.2d 160 (Fla. 4th DCA 1990) (On appeal after the relinquishment of jurisdiction to the trial court, this court affirmed the trial court's order denying defendant's motion for new trial. Thomas v. State, 574 So.2d 259 (Fla. 4th DCA 1991).); Jordan v. State, 470 So.2d 801 (Fla. 4th DCA 1985); Uprevert, 507 So.2d at 163. "Sufficiency of evidence" is a test of whether the evidence presented is legally adequate to justify the verdict. Tibbs, 397 So.2d at 1123.
632 So.2d at 135 (footnote omitted).
[4] As explained in Geibel:

In deciding a motion for new trial pursuant to Florida Rule of Criminal Procedure 3.600(b) [sic] on the ground that the verdict is contrary to the weight of the evidence, the trial court acts as a "safety valve" by granting a new trial where the evidence is technically sufficient to prove the criminal charge but the weight of the evidence does not appear to support the jury verdict. Moore, 800 So.2d at 749. Thus, this rule "enables the trial judge to weigh the evidence and to determine the credibility of witnesses so as to act, in effect, as an additional juror." Uprevert v. State, 507 So.2d 162, 163 (Fla. 3d DCA 1987) (quoting Tibbs v. State, 397 So.2d 1120, 1123 n. 9 (Fla. 1981)).
817 So.2d at 1044 (footnote omitted).
[5] In Interest of A.P., 636 So.2d 790 (Fla. 4th DCA 1994); Webster v. State, 549 So.2d 784, 784-85 (Fla. 4th DCA 1989) ("[I]nasmuch as this court reversed appellant's conviction of second-degree felony murder of the driver of the getaway car, Lawrence Hargrett, because of an insufficiency of the evidence, appellant cannot be re-tried upon the same charge of second-degree felony murder because of double jeopardy considerations.") (citations omitted); see also Smith v. State, 379 So.2d 996 (Fla. 5th DCA), cert. denied, 386 So.2d 642 (Fla.1980). In A.P., for example, the defendant filed a motion for new trial and a motion for arrest of judgment. The trial court denied the motion for arrest of judgment but granted the motion for new trial finding that there was insufficient evidence and the state failed to prove the offense. On appeal, the appellate court granted a writ of prohibition because a new trial would violate the defendant's double jeopardy rights. The court held that the correct ruling would be to discharge the defendant. The court, referring to its decision in Coyle v. State, 493 So.2d 550 (Fla. 4th DCA 1986), wrote:

This court went on to state that the Double Jeopardy Clause of the United States Constitution compelled a remand to the trial court with instructions to discharge the appellant because the state had failed to present sufficient evidence at trial that the vehicle found in appellant's possession was the vehicle taken from the victim of the theft. Id. at 551, citing Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); Greene v. Massey, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); Kimbler v. State, 360 So.2d 1270 (Fla. 1st DCA 1978). 636 So.2d at 790-91.