DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**JUDITH LONG,**
Appellant,

v.

**JAMES L. KROPKE** and **ROSE E. KROPKE,**
Appellees.

No. 4D22-3310

[August 16, 2023]

Appeal of a nonfinal order from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Gary Sweet, Judge; L.T. Case No. 432022CA000540.

Kansas R. Gooden of Boyd & Jenerette, P.A., Miami, and Lara J. Edelstein of Boyd & Jenerette, P.A., Jacksonville, for appellant.

William R. Ponsoldt, Jr., of Wright, Ponsoldt & Lozeau Trial Attorneys, L.L.P., Stuart, for appellees.

PER CURIAM.

Judith Long, the defendant in a negligence action arising from a car accident, appeals an order granting plaintiffs James and Rose Kropke's motion to amend the complaint to plead a claim for punitive damages. We reverse because the Kropkes failed to establish a reasonable evidentiary basis to find that Long's conduct amounted to gross negligence under section 768.72(2)(b), Florida Statutes (2021).

## Background

The car accident occurred in the morning on a residential street inside a gated country club community. A resident had stopped his golf cart on the right side of the street, about four to five feet past an intersection. He was talking to the Kropkes, who were standing on the street between his golf cart and the curb. Long drove her car around a corner and onto the street where the resident's golf cart was stopped. Her car collided with the back of the golf cart and hit Rose Kropke at about the same time. The

collision pushed the golf cart forward about six to eight feet and caused it to hit James Kropke.

The Kropkes sued Long for negligence and loss of consortium, alleging that the accident caused Rose Kropke to suffer severe permanent injuries. They later moved to amend the complaint to add a claim for punitive damages based on gross negligence.

In their proposed amended complaint, the Kropkes alleged that Long had a habit of speeding through the community, was speeding at the time of the accident, and ran a stop sign at the corner before turning onto the street where they were standing. In support of those allegations, they submitted an evidentiary proffer consisting of: (1) Rose Kropke's answers to interrogatories, in which she stated that Long was speeding at the time of the accident and had run the stop sign and identified two witnesses who would testify to Long's habit of speeding in the community; (2) an affidavit by the resident with the golf cart, in which he stated it was "obvious" to him that Long must have accelerated through the intersection in excess of the speed limit and could not have stopped at the stop sign; and (3) a proffer of testimony from the resident with the golf cart and the Kropkes that Long sped through the intersection and did not stop at the stop sign.[1]

The court granted the motion to amend, and Long timely appealed.

**Analysis**

We review an order on a motion to amend a complaint to plead a claim for punitive damages de novo. *Marder v. Mueller*, 358 So. 3d 1242, 1245 (Fla. 4th DCA 2023).

Punitive damages may only be awarded where the conduct of the defendant amounts to gross negligence or intentional misconduct. § 768.72(2), Fla. Stat. (2021). Before a plaintiff may plead a claim for punitive damages, the plaintiff must make a "reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. (2021).

---

[1] We have not considered any of the Kropkes' proffered evidence that did not relate to a specific allegation in their proposed amended complaint. *See HRB Tax Grp., Inc. v. Fla. Investigation Bureau, Inc.*, 360 So. 3d 1159, 1162 (Fla. 4th DCA 2023); *Varnedore v. Copeland*, 210 So. 3d 741, 745 (Fla. 5th DCA 2017).

In this case, the Kropkes' claimed basis for recovery of punitive damages is gross negligence. Gross negligence requires proof that "the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b), Fla. Stat. (2021). The level of negligence required is equivalent to that required to support a conviction for criminal manslaughter. *Valladares v. Bank of Am. Corp.*, 197 So. 3d 1, 11 (Fla. 2016); *see also Marder*, 358 So. 3d at 1245 (recognizing that punitive damages are "reserved for truly culpable behavior and are intended to 'express society's collective outrage'") (quoting *KIS Grp., LLC v. Moquin*, 263 So. 3d 63, 65–66 (Fla. 4th DCA 2019)).

The Kropkes argue that they established a reasonable basis to find that Long's conduct amounted to gross negligence under section 768.72(2)(b) because their proffered evidence showed that Long "consciously disregarded" the safety of everyone in the community by habitually speeding, speeding at the time of the accident, and running the stop sign at the intersection. They rely on three cases in which the evidence was found to be sufficient to support a claim for punitive damages and argue that the evidence in this case is similar to the evidence in those cases. We disagree and conclude that none of the cases upon which the Kropkes rely are sufficiently similar to support the required reasonable evidentiary showing of gross negligence.

First, the Kropkes rely on *L.E. Myers Co. v. Young*, 165 So. 3d 1 (Fla. 2d DCA 2015). In that case, a driver was driving ninety-one miles per hour in a forty-mile-per-hour zone near a construction site and was weaving in and out of oncoming traffic before he rear-ended a stopped car without braking. *Id.* at 3. The Second District suggested that the evidence might have supported a claim for punitive damages against the driver, *id.* at 7-8, but he had either settled or been dismissed from the suit by the time the appeal was filed*, id.* at 3 n.1.

Second, the Kropkes rely on *Hardiman v. Stevens*, No. 8:09-cv-2110-T-33AEP, 2011 WL 1480401 (M.D. Fla. Apr. 19, 2011). In that case, a driver was driving fifty to fifty-five miles per hour on a wet road while approaching stopped traffic. *Id.* at *1, *3. The driver turned sharply at the last minute to avoid a collision, but his van hit a curb, became airborne, and struck a school bus with enough force to separate the bus from its suspension system. *Id.* The federal district court, applying Florida law, denied the driver's motion for partial summary judgment and ruled that sufficient issues of fact existed to allow the jury to consider awarding punitive damages against him. *Id.* at *3–4.

3

Third, the Kropkes rely on *Williams v. Florida East Coast Railway Co.*, 552 So. 2d 279 (Fla. 3d DCA 1989). In that case, a train engineer was speeding in an area where pedestrians frequently crossed the train tracks and failed to brake before hitting the plaintiff, who was unconscious and lying partially on the tracks. *Id.* at 279-80. The engineer admitted that he saw something on the tracks but testified that he had a personal policy not to stop or slow down for obstacles unless the train was in danger of derailing. *Id.* at 280. The plaintiff proffered evidence that the engineer had been involved in twenty prior accidents, many of which had caused serious injuries or fatalities. *Id.* at 280 n.1. The Third District held that the evidence was sufficient to support the plaintiff's claim for punitive damages against the engineer. *Id.* at 281.

The Kropkes did not proffer sufficient evidence in this case to show that Long's conduct was as egregious as that of the defendants in *Young*, *Hardiman*, or *Williams*. Most notably, the Kropkes did not proffer any specific evidence as to how fast Long was driving at the time of the accident; their proffered testimony was only that she was "speeding." Nor did they proffer any evidence that the road conditions were especially dangerous, that any vehicles were on the road other than the resident's golf cart, or that Long saw or could have seen the golf cart before she turned the corner. *Cf. Young*, 165 So. 3d at 3 (evidence showed that the driver was driving more than fifty miles per hour over the speed limit near a construction site, was weaving in and out of oncoming traffic, and did not brake before hitting a stopped car); *Hardiman*, 2011 WL 1480401, at *1, *3 (evidence showed that the driver was driving fifty to fifty-five miles per hour on a wet road while approaching stopped traffic);[2] *Williams*, 552 So. 2d at 279–80 (evidence showed that the train engineer was speeding in an area where pedestrians frequently crossed the tracks and chose not to stop or slow down despite seeing something on the tracks).

The Kropkes appear to rely on *Williams* to support their argument that Long's alleged habit of speeding in the community demonstrated a conscious disregard for the safety of others. But the plaintiff in *Williams* proffered specific evidence regarding twenty serious accidents in which the same engineer who hit the plaintiff had previously been involved, 552 So. 2d at 280 n.1, and that engineer testified he had a personal policy not to stop or slow down for obstacles on the tracks unless the train was in

---

[2] To the extent the Kropkes rely on *Hardiman* to support an inference that Long must have been speeding based on the impact to the resident's golf cart, we note that the force required to push a golf cart forward six to eight feet is much less than that required to separate a bus from its suspension system. *See Hardiman*, 2011 WL 1480401, at *1, *3.

4

danger of derailing, *id.* at 280. Here, the Kropkes did not proffer any specific evidence regarding Long's prior instances of speeding. They identified two witnesses who would testify to Long's "habit" of speeding, but they did not proffer any actual testimony from those witnesses as to the frequency or degree of Long's speeding. Nor did they proffer any evidence that Long had expressed a "conscious disregard" or "indifference" to the safety of the community, as required by section 768.72(2)(b). *Cf. Williams*, 552 So. 2d at 281 (noting the engineer's "accident history and statements evidencing his higher concern for the locomotive than for the safety of pedestrians").

In addition to the three cases discussed above, the Kropkes also cite *Lester v. State*, 737 So. 2d 1149 (Fla. 2d DCA 1999). In that case, the Second District held that the evidence was sufficient to sustain a conviction for vehicular homicide where the defendant ran a red light and three stop signs in an attempt to evade the police before striking the victim's car at an estimated sixty miles per hour, causing the victim's car to flip over and hit a tree. *Id.* at 1150–52. Even if we agreed that the facts in *Lester* were similar to the facts in this case, the Kropkes' reliance on *Lester* is misplaced because the standard of proof required to sustain a conviction for vehicular homicide is less than the standard of proof required to sustain a conviction for manslaughter by culpable negligence. *See McCreary v. State*, 371 So. 2d 1024, 1025–27 (Fla. 1979); *Valladares*, 197 So. 3d at 11 (recognizing that the level of negligence required to support an award of punitive damages is the same as that required to sustain a conviction for manslaughter).

In summary, we conclude that the Kropkes' proffer was insufficient to establish a reasonable evidentiary basis for recovery of punitive damages based on gross negligence under section 768.72(2)(b). The Kropkes' proffer demonstrated that Long's conduct as alleged in their complaint amounted to ordinary negligence, not the type of "truly culpable" or "outrage[ous]" conduct that would support a claim for punitive damages. *See Marder*, 358 So. 3d at 1245. Accordingly, we reverse the order granting the Kropkes' motion to amend the complaint to plead a claim for punitive damages and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

WARNER, GERBER and CONNER, JJ., concur.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***